Exhibit B

# COLLECTIVE   BARGAINING  AGREEMENT

## Between

## COMFORT AUTO GROUP NY, LLC.

### dba Chrysler Jeep Dodge RAM Fiat of Bay Ridge

&

## LOCAL 259 UAW, AFL-CIO

## Effective: 6/1/2019 and Expires: 5/31/2020



Collective Bargaining Agreement
Comfort Auto Group NY, LLC.
dba Chrysler Jeep Dodge RAM Fiat of Bay Ridge
-&-
Local 259 UAW, AFL-CIO

## Table of Contents

| | | | Page No. |
|---|---|---|---|
| Section I | - | Coverage | 5 |
| Section II | - | Union Shop & Check off/Hiring Hall | 5 |
| Section III | - | Stewards | 7 |
| Section IV | - | Discrimination | 8 |
| Section V | - | Discharge | 8 |
| Section VI | - | Work Week | 8 |
| Section VII | - | Vacations | 10 |
| Section VIII | - | Holidays | 11 |
| Section IX | - | Personal/Floater | 12 |
| Section X | - | Tool Insurance | 12 |
| Section XI | - | Coffee Breaks | 12 |
| Section XII | - | Upgrading | 13 |
| Section XIII | - | Productivity & Efficiency | 13 |
| Section XIV | - | Grievance & Arbitration | 15 |
| Section XV | - | Leaves of Absence | 16 |
| Section XVI | - | Seniority | 16 |
| Section XVII | - | Union Visitation | 18 |
| Section XVIII | - | Injuries | 18 |
| Section XIX | - | Layoff Notice | 18 |
| Section XX | - | Sanitary Conditions | 19 |
| Section XXI | - | Bulletin Boards | 19 |
| Section XXII | - | Assignment of Contract | 19 |
| Section XXIII | - | Uniforms | 19 |
| Section XXIV | - | Welfare Plan | 19 |
| Section XXVII | - | Saving Clause | 21 |
| Section XXVIII | - | Bereavement | 22 |
| Section XXIX | - | Military Service | 22 |
| Section XXX | - | Reduction of Benefits | 23 |
| Section XXXI | - | Strikes & Lockouts | 23 |
| Section XXXII | - | Training | 23 |
| Section XXXIII | - | Labor Cost Increases | 24 |
| Section XXXIV | - | Term | 25 |

Table of Contents – Continued

Appendix "A" Prevailing Hourly & Minimum Hiring Rates      31

Appendix "B" Local 259 UAW Health & Welfare Fund
Social Security Department Agreement      33

Appendix "C" Referencing Section X- Tool Insurance      35

**AGREEMENT**, made the 5th day of July, 2019 by and between **COMFORT AUTO GROUP NY, LLC. dba CHRYSLER JEEP DODGE RAM FIAT OF BAY RIDGE** located at 8825 5th Avenue, Brooklyn, New York 11209 and 8635 18th Avenue, Brooklyn, New York 11214 (hereinafter referred to as the "Employer") and the **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA**, and its **LOCAL 259 UNITED AUTOMOBILE WORKERS, AFL-CIO**, located at 80 Jerusalem Avenue, Hicksville, New York 11801 (hereinafter refer to as the "Union"),

<u>W I T N E S S E T H</u>

WHEREAS, it is the intent and desire of the parties hereto to foster and promote sound, stable and peaceful labor relations between the Company, its employees covered by this Agreement, and the Union, and to establish a basic understanding relative to rates of pay, hours of work and other conditions of employment, and

WHEREAS, it is the further intent and desire of the parties hereto to establish an orderly relationship between the Employer and the employees, so that grievances and complaints will be settled quickly;

NOW, THEREFORE, the parties hereto mutually agree as follows:

4

**SECTION I   -        COVERAGE**:

The Employer recognizes the Union as the sole and exclusive bargaining representative of the following employees, all service technicians and parts counterman employees of the Employer (any reference to gender is meant to include he or she), excluding porters, drivers, detailers, office clerical employees, new and used car salesmen, guards, watchmen, utility classification, professional employees and supervisors as defined in the Act.

**SECTION II   -        UNION SHOP – CHECKOFF & HIRING HALL**:

A.  It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union in good standing on the effective date of this Agreement shall remain members in good standing, and those who are not members on the effective date of this Agreement shall, on the 31st day following the effective date or signing of this Agreement, whichever is later, become and remain members in good standing in the Union.

B.  The Employer agrees that, in the event it shall require additional employees in the classifications of employment by this Agreement, it shall hire such additional employees from an employment office operated by the Union.  In the event that said employment office is unable to supply help satisfactorily to the Employer within 12 working hours following the request, the Employer shall be free to hire in the open market.

The Employer shall notify the Union whenever such employment takes place.

C. The facilities of the employment office operated by the Union shall be available to both members and non-members of the Union, and the Union warrants that in

the operation of said employment agency and in referrals to the Employer, it will not discriminate against any individual applicant for employment because of non-membership in the Union.

D. The Employer shall have the right to reject any applicant for employment.  A notice of the provisions of the section shall be posted in accordance with the requirements of applicable law.

E. New employees, during the first ninety (90) calendar days of employment shall be considered probationary employees, and during said period may be discharged with our without cause, without recourse to the grievance procedure.

E1: Probation & Holiday -After passing probation period, employees are not entitled to retro-active holiday.

F. Upon written notice from the Union, the Employer shall discharge any employee not a member in good standing as defined under the National Labor Relations Act, as amended.

G. When any new employee is hired, the shop steward shall be notified when he starts to work.

H. Service Salesmen who were not, and are not members of the Union as of the effective date of this Agreement may be covered by the Agreement under the following conditions:

1. If the Union demands recognition to said Employer's service salesmen upon a showing of an authorization card signed by said service salesmen or supervisors as defined under the Labor Management Relations Act, as amended, then said employee shall be covered by this Agreement.

6

2. If the Employer does challenge the authenticity of the signature, or raises a question as to the status of any service salesman or salesmen as supervisors as defined under the Labor Management Relations Act, as amended, then any determination with reference to the coverage of Service Salesmen under this Agreement shall be resolved pursuant to the provisions of the Labor Management Relation Act, as amended.

I.  Upon written authorization of the employees, the Employer agrees to deduct initiation fees, dues and assessments of all members from the first weekly wages due employees each month.  The total amount of moneys together with an itemized list and schedule shall be sent forthwith to the Union's Treasurer.

**SECTION III** -        **STEWARDS**:

A. The Employer recognizes the Union's Stewards and officials as the Union's authorized representatives for the purpose of settlement of grievances hereunder, provided that in the event there is more than one (1) steward in the shop, discussion of grievance shall be limited to the steward who is directly involved and familiar with the grievance.

B. The Stewards shall suffer no loss of pay for the time spent by them during regular working hours in the handling of the grievance procedure set forth hereinafter and for attendance at arbitration hearings.

C. The Chief Shop steward shall head the seniority list and the steward shall head the seniority list in his branch.  The Employer shall recognize an employee as steward only after receiving written notice from the Union.

D.  No steward shall be discharged summarily except in the case of drunkenness, gross negligence, insubordination, dishonesty or any crime involving employment.

7

However, it is understood that in the event an employer determines to discharge a steward for any other cause, the steward shall remain at work pending an arbitration decision, and said arbitration decision to be rendered not later than 30 days after the determination of the employer to discharge the steward. Notwithstanding the above, the Employer may exercise its rights under the Productivity and Efficiency Clause of this Agreement.

**SECTION IV    -    DISCRIMINATION:**

The Employer shall not discriminate against any person because of membership in the Union or legitimate activities in its behalf.  There shall be no discrimination in rates of pay, classifications, promotions or other working conditions because of race, creed, color or sex, except as otherwise required by law.

**SECTION V -    DISCHARGE:**

A.  No employee shall be disciplined or discharged by the Employer without just cause. In the event of any dispute with respect to the justification of any discharge, the matter may be taken up as a grievance and submitted to arbitration in accordance with the procedures hereafter set forth in the Section. In the event that such matter goes to arbitration, the arbitrator, in proper cases may order the reinstatement of such employees with back pay.

**SECTION VI -    WORK WEEK:**

(a). The regular work week shall be five (5) consecutive days per week, forty (40) hours per week, eight (8) hours per day, from Monday to Friday, inclusive, based on the Employer's present schedule of hours.

(b). The Employer have the right to schedule employees to begin work between

8

7am and 3pm providing that the Employer gives a six working day notice to an employee. If an Employee represents a legitimate hardship with child-care, the Employer shall grant an extension of five working days to the employee in order for the employee to get his affairs in order.

(c). The Employer shall have the right to create an alternative work week which shall be five (5) consecutive days per week, forty (40) hours per week, eight (8) hours per day, from Tuesday to Saturday, inclusive, based on the Employer's present schedule of hours. Staffing for such work week as follows: (1) With employees hired after the signing of this agreement (2) with volunteers from among bargaining unit employees (3) on a rotating basis that is agreed to between management and bargaining unit employees, and (4) if the Employer cannot have its staffing needs met for a Tuesday through Saturday work week through the above procedures, then the Employer shall have the right to staff such work week with inverse seniority.

(d). All work that is done before an employee's regular starting hours or after an employee's regular quitting hours shall be paid for at the rate of one and one-half (1½) times the regular hourly rate.

(e). Employees that work a sixth (6th) day shall be compensated with one and one half (1 1/2) times the regular hourly rate for each hour worked or produced and further it shall not be mandatory for an employee to work a sixth (6th) day.

(f). The Employer may create a work week that is different than (a). and (c). which may include Sunday however the work week must be five (5) consecutive days, eight (8.0) hours per day and forty (40.0) hours per week. Staffing for such work week shall be on a volunteer basis for employees hired prior to June 1, 2018 and also new hire basis for employees hired after June 1, 2018.

9

(g). The Employer must issue work week schedules to each employee and post the same in the shop no less than six (6) working days in advance of the effectiveness and or changes.

**SECTION VII**       -       **VACATION**:

    A.  All employees shall receive paid vacations as follows:
        1.  One (1) year of service – One (1) week vacation with pay
        2.  Two (2) years of service – Two (2) weeks' vacation with pay
        3.  Seven (7) years of service – Three (3) weeks' vacation with pay
        4.  Ten (10) years of service – Three (3) weeks with One (1) additional day

    B.  A day of vacation shall be eight (8) times the basic hourly rate.  In the event any employer has heretofore granted vacation pay on the basis of average earnings, he shall continue to grant such vacation pay.

C.  Vacations shall be scheduled all throughout the year. During the period of January 1 through March 1, employees shall place their vacation selections on a calendar which shall be posted for all employees to see outside the office of the Service and Parts Director. Seniority shall prevail in case of a dispute as to who rates priority in selecting a given vacation period. Only one (1) employee per classification shall be on Vacation at a time unless authorized in writing by Management.

D.  If an employee does not select a vacation(s) as stated in D. above, the employee may select a vacation(s) in week where there is no dispute no less than thirty days from the actual vacation week(s). An employee that selects a vacation(s) less than thirty days from the actual vacation(s) week must receive management's approval in writing to obtain authorization for vacation leave. **IMPORTANT – the Employer is not obligated to paying any employee for any unused vacation earnings at any time.**

10

E.  If vacation periods are scheduled through a paid holiday, then the employee affected shall have his/her vacation period extended one (1) day or receive a day's vacation pay in lieu thereof.

F.  If a holiday falls during the schedule vacation of an employee, said employee shall then receive additional day(s) following designated vacation time. The day(s) of the holiday shall be observed following the vacation, extending one or two days.  There will be no additional pay.

G.  If an employee with six (6) months seniority or more terminates his employment with the Employer, or is laid off of discharged, said employee is to receive accumulated vacation pay on a pro-rata basis for the actual time worked during the contract year.

H.  In cases of discharge for theft, no vacation pay will be allowed.  All cases of discharge for theft, however, maybe referred to a Joint Labor Management Committee for review before final disposition.

**SECTION VIII**          -          **HOLIDAYS:**

A. The following holidays are to be paid for at eight (8) times the basic hourly rate regardless of the day proclaimed for their observance or the day on which they occur:

| | |
|---|---|
| New Year's Day | Thanksgiving Day |
| Memorial Day | Personal Day |
| Independence Day | Day before Christmas |
| Labor Day | Christmas Day |
| Day before New Year's | Employee Birthday |

*Family Leave: The Employer agrees that in the event of a new born child, an employee shall be paid one (1) day's pay at eight (8) hours times his/her regular hourly rate of pay, which shall be taken on the actual date of birth. Employee Birthday: requires a minimum of 12 months seniority to be eligible.*

B.  Any work performed on the above holidays is to be paid for at least two (2) times the regular hourly rate, it is agreed that no work shall be performed on

11

Thanksgiving Day, Christmas Day, and New Year's Day in any case.

 C. If a holiday falls on the weekend, the scheduled workday preceding or proceeding following shall be observed as day off with pay.

**SECTION IX**   -   **PERSONAL/FLOATER:**

 There shall be seven (7) personal/floater days.  Employees shall give reasonable notice to utilize days, except in the event of illness.  No employee shall be entitled to Personal/Floater days until he/she has been employed six (6) months.  After six (6) months' employees shall be entitled to the full seven Personal/Floater days.

 Employees with six (6) months' seniority or more, who are laid off, discharged, or otherwise terminate their employment with the Employer, shall be entitled to pro-rata Personal/Floater leave on the basis of one (1) day for each two (2) months of service per year.  In the event an employee has been paid Personal/Floater leave in advance of accrued time, such as six (6) Personal/Floater days paid after seven (7) months' service the Employer shall be permitted to deduct the unearned portion of the Personal/Floater days. **IMPORTANT – the Employer shall not be obligated in paying any employee for any unused personal / floater days at any time.**

**SECTION X** -   **TOOL INSURANCE:**

The Employer agrees to pay the cost of, or to self-insure tool insurance up to a maximum declared value of Fifty Thousand ($50,000) Dollars per mechanic.  The Employer may by mutual agreement, in writing with the mechanic accept a greater liability for tools.  (See Appendix "D" Explanation on Tool Insurance).

**SECTION XI** -   **COFFEE BREAKS:**

 Employer shall grant two (2) coffee breaks a day, one (1) in the morning and one (1) in the afternoon of either 10 or 15 minutes duration depending upon the past practice

of the Employer as to the length of time for the coffee break.

**SECTION XII        -        UPGRADING:**

The parties are to work out a program of upgrading skills of the employees in the industry at the earliest possible date.  Employees that are on an upgrading program shall be upgraded to their classification within three (3) months.

**SECTION XIII        -        PRODUCTIVITY & EFFICIENCY:**

The Union and the Employer, out of mutual responsibility for high quality service to the customer and for the economic well-being of the industry and its employees, agree to adopt a joint program for improving the productivity and efficiency of servicing operations, improving employee income and improving job stability and Employer profitability.

The Union is deeply conscious of the need to foster high-level productivity in the service shops.  The industry is deeply conscious of the need to foster employee income commensurate with improved levels of productivity.

It is the intent of the parties hereto that adequate qualitative and quantitative production standards shall be met, except where it is beyond the control of the employees, due to lack of work, or discrimination in the allocation of work.

Therefore, a technician should consistently produce a minimum number of chargeable hours of labor to meet the weekly guarantee of thirty five (35.0) hours.

It is the exception that an incentive technician should consistently produce a minimum of 35.0 chargeable hours of labor in a forty (40) our work week.  An incentive technician who fails to produce 35.0 chargeable labor hours per week in any two (2) out of four (4) rolling week period shall be placed on a performance review period for the next four (4) weeks.  While on performance review, the employee will receive pay based

13

on his/her actual hour produced.  The employee's guarantee will be reinstated when the employee has met his/her minimum chargeable hours for four (4) consecutive weeks. Notwithstanding, should the employee thereafter fail to produce a minimum chargeable hours of labor equal to the contractual guarantee in a 40 hour week, the employer shall have the right to issue additional disciplinary action up to and including discharge.

No employee shall be placed on performance review until written notice is given to the Union, the Chief Shop steward and the technician involved.  The Union, upon receiving notice, shall have the right to challenge the employee being placed on performance review on lack of work or in the allocation of work.  The Union shall have the right to request documentation supporting that the employee has failed to produce chargeable labor hours equal to the contractual guarantee in two out of four rolling week periods.  The Union may also request documentation to determine whether or not there was a lack of work or documentation in the allocation of work to determine whether or not the Union has a valid grievance.  The Employer shall not unreasonably deny or withhold such information.  The Union shall be provided upon request with all repair orders, time flags, back flags, and the workload distribution in the specific department so as to determine if the lack of productivity is due to factors beyond the control of the affected employee.

The Union shall have the right to challenge such productive discharge under the grievance and arbitration procedures provided herein, only on the grounds of lack of work or discrimination in the allocation of work.  Except for the above, it is not intended to limit or waive the grievance and arbitration provision as set forth in Section 6 of this Agreement.

The Employer may deduct chargeback time from Technician's productive time

14

provided the Employer will first notify the Technician of a potential chargeback for which he is responsible. If the chargeback is disputed, no action will be taken to apply the charged hours until the issue is resolved by the parties or through the grievance process. Chargebacks will be limited to the labor cost.

As a result of discussions between the Employer and the Union during the bargaining process which has created this collective bargaining agreement, the parties agree to immediately and on an on-going regular basis during the term of this collective bargaining agreement to work with each other in collaborative fashion in order to implement positive change in policy, protocol and procedure to increase the productivity and efficiency of the fixed operations, service and parts.

**SECTION XIV        -        GRIEVANCE & ARBITRATION:**

A. Grievance:  Should any grievance or dispute arise between the Employer and the Union, such grievance or dispute shall be taken up for settlement as follows:

1.  All grievances shall first be presented to the immediate supervisor by the employee, shop steward, or both.

2. If the grievance is not satisfactorily adjusted by the immediate supervisor, it shall be presented in writing by the Shop steward to the general manager, who shall write his disposition of the grievance and return it to the shop steward within five (5) working days of receipt thereof.

3. If the grievance is not satisfactorily adjusted by the general manager, the shop steward may call in a Local Union Representative to meet with the general manager, or a representative of the Employer, within five (5) working days following receipt of the general manager's answer in the second step of the grievance procedure.

B. Time Limits:  All grievances will be considered settled at any of the above steps unless appealed to the next step within five (5) working days.  Failure of a party to

15

process its side of the controversy within the five (5) days' time limitations shall be deemed a default on its part.  The time limits may be extended by mutual consent.

C. Arbitration:

1.  In the event, however such procedures do not result in a satisfactory settlement of the dispute in question, then the dispute shall be submitted for arbitration within ten (10) days following the completion of the final step in the grievance procedure to Elliot Shriftman and Roger Maher on a rotating basis.

2.  The Arbitrator's findings and decision shall be final, binding and conclusive on both the parties hereto, and judgment thereon may be entered in any Court or forum having jurisdiction.  The Arbitrator's fee, if any, shall be borne equally by the Employer and the Union.

3. The Union and the Employer may, at their option dispense with the first step of the grievance procedure and take up such matters directly with each other.

**SECTION XV**        -        **LEAVES OF ABSENCE**:

A.  Employees shall not be removed from the seniority list for two (2) years when they are absent from work because of sickness, or injury provided notification of such sickness or injury has been given the Employer within three (3) days after the employee ceases work, or the failure to do so is satisfactorily explained.

B.  Any member who is elected to a permanent office or as a delegate to any Union activity necessitating a temporary leave of absence, shall, at the end of the term in the first instance or at the end of his mission in the second instance, be re-employed at his former rate of pay, plus any increase which has become effective during his absence, any member so acting shall accumulate seniority rights during this period.

C. In cases whereas an Employee is returning to work as stated in either A or B,

16

however the Employee's training is substandard in comparison to his or her classification prior to the leave of absence, the Employee shall be employed in an appropriate classification and shall be provided full opportunity to re-establish training levels for the employee's original classification. Once the required training criteria has been met by the Employee, the Employee shall be reinstated to the original classification however with no back pay obligation of the Employer.

## SECTION XVI -    SENIORITY:

A.  Seniority shall be on the basis of classification at all times, based on the dates of commencement of employment.

B.  In slow periods, when layoffs become necessary, probationary employees shall be laid off before any permanent employees shall lose any time.  If after all probationary employees have been laid off, other reductions in the work force are necessary; the Employer shall lay off, on a group classification basis, in accordance with the principles of seniority.  Such laid off employees shall be returned to work, if available, in the inverse order of seniority, before any new employees are hired.

If a laid off employee fails to return to work within five (5) calendar days after the mailing of a notice to him/her to do so, he/she shall lose all seniority rights unless otherwise satisfactorily explained.

C.  In the event an employee is promoted to a higher classification and subsequently there is a reduction in force, such employee shall have the right to exercise his seniority, based on his/her length of service with the Employer, in the classification from which he was promoted.

D.  Employees with two (2) years or less of service who have been laid off for a period greater than their length of service with the Employer prior to any such

17

layoffs shall lost all seniority rights

E. The parties recognize that it is desirable to grant promotional opportunities to bargaining unit employees rather than hire new employees from outside sources. However, the parties also recognize that such promotional opportunities are subject to various qualifications, such as the question of the ability, skill and physical fitness of an employee to perform the job which is open for promotion.

Accordingly, the Employer will endeavor to grant promotional opportunities to the employees subject to the ability, skill and physical fitness of the employee to perform the work, judgment of the Employer to be final in the matter, subject to arbitration only if the Employer's determination is alleged to be arbitrary or capricious.  FUNDS: Employees who have lost time as a result of a strike to enforce collection of delinquent contributions shall be compensated for all time lost.

**SECTION XVII    -    UNION VISITATION**:

Properly accredited representatives of the Union shall have reasonable access, at all time, to the premises of the Employer, provided such access does not interfere with the normal flow of business and further provided that a proper official of the Employer is notified prior thereto.

**SECTION XVIII    -    INJURIES**:

Any employee who requires time off for medical attention for injury received in the plant is to be paid for such time, up to two (2) days and the same shall be counted as time worked for the purpose of computing overtime pay.

**SECTION XIX    -    LAYOFF NOTICE**:

A.  In the case of a layoff, except probationary employees, the Employer shall give three (3) working days' notice to the employees affected, or three (3) days' pay in

18

lieu thereof.

B.  If an employee reports to work, such employee is to receive at least eight (8) hours work or pay.  The Employer however, in line with seniority, notify any employee by 5 pm of the day prior to the time such employee must report for work to the effect that he need not report, in which event the Employer need not pay such employee any amount or give such employee any work that day.  The Employer shall not abuse this provision.

**SECTION XX**        -        **SANITARY CONDITIONS**:

A.  The Employer agrees to furnish adequate sanitary conditions and will comply with the Federal, State and City laws dealing with sanitary conditions.

B.  The Employer agrees to furnish adequate locker facilities for all of his employees.

C.  The Employer agrees to keep adequate medical supplies on hand at all times.

**SECTION XXI**        -        **BULLETIN BOARDS**:

The Employer agrees to furnish the Union with Bulletin Boards which shall be known as the Union Bulletin Boards, for the sole use of the Union except that no material derogatory to or reflecting upon the Employer shall be so posted.

**SECTION XXII**        -        **ASSIGNMENT OF CONTRACT**:

This Agreement shall be binding on all parties hereto their legal representatives and assigns, it being understood that no Employer shall take any action with the objective of avoiding its obligations under this contract.

**SECTION XXIII**        -        **UNIFORMS**:

The Employer shall supply eleven (11) uniforms and jackets for each employee and pay for the laundering of same once a week.

The Employer also agrees to furnish seven (7) T-shirts, and also launder the same

19

with current uniforms.

**SECTION XXIV   -   WELFARE PLAN**:

Attached hereto and made a part hereof is Appendix "B", Welfare Fund Agreement, which shall be considered a part of this Agreement the same as if written herein.

In all suits and proceedings for the recovery of employer contributions or any other payments due under Appendix "B", set forth hereinafter, the Employer shall be liable not only for the contributions or other payments which may be due, but interest at 6% plus reasonable attorneys' fees, upon a motion to confirm made fifteen (15) days or more after issuance of an arbitrator's award without payment of such liability as may be found by him within 15 day period.

The Employer shall begin to make contributions for new employees so that will ensure that the employee shall be covered by benefits offered by the fund on the ninety first day of employment.

**SECTION XXVII   -   SAVING CLAUSE**:

If any provision of this Collective Bargaining Agreement should be held or adjudged illegal or in violation of any present or future law such adjudication shall not invalidate any other portion or provision of this Agreement, or relieve either party thereto from their liabilities and obligations under this Agreement, but the same shall continue in full force and effect.

In the event that any portion of said Agreement is held illegal a above mentioned the parties agree to meet promptly in order to agree upon a proper and legal substitute therefore.

20

**SECTION XXVIII   -   BEREAVEMENT**:

In the event of death in the immediate family of an employee, said employee shall be paid up to three (3) days' pay at the basis hourly rate for time lost on consecutive days, beginning with the day of death or funeral, which the employee would otherwise have worked as a regularly scheduled work day.

The term "immediate family" shall be limited to the employee's spouse, children, Step-children, mother, father, mother in-law, father in-law, grandparents, brother and sister.

The Employer may request reasonable proof to support an employee's claim for such benefit under this section.

**SECTION XXIX   -   MILITARY SERVICE**:

If any employee of the Employer should enter into the Armed Forces of the Country, upon discharge of such employee from such service, the Employer shall, upon the request of the Union, reinstate such employee without loss of seniority or other rights and benefits in the position theretofore held by such employee.  The time spent in such service shall be added to the seniority status held by such employee before he left his position with the Employer.  The rate of such employee, when reinstated, shall be no less than the wages received by him/her prior to leaving the Employer plus any increase and improvements which have become effective in his/her absence.

**SECTION XXX   -   REDUCTION OF BENEFITS**:

No employee shall suffer from any reduction in pay or loss of any economic benefits as a result of the signing of this Agreement and during the term of this Agreement.

21

**SECTION XXXI    -    STRIKES AND LOCKOUTS**:

A.  The parties agree that there shall be no lockouts on the part of the Employer and no strikes, slowdowns or concerted stoppages of work on the part of the Union during the term of this agreement.  However, it is understood and agreed that the foregoing shall not apply in the event that any party fails to carry out a final award of an arbitrator, it being understood that no award shall be deemed final until either party has either failed to appeal through applicable judicial process from such award, or having appealed, the award is held to be final and binding.

**B.**  Refer to Section XXIV: Welfare Plan and Section XXV: Pension Plan.

**SECTION XXXII    -    TRAINING**:

It is the belief of the Employer that training is an integral part of the success and efficiency of the dealerships operation and instrumental to employ development within their jobs and preparation for career advancement.  Training is therefore viewed as a shared responsibility of the dealership and its employees in order to accomplish the mutual benefit of an increasingly skilled and efficient work force.  Accordingly, it is a requirement that all technicians participate in training but not limited to, ASE certification.

Training programs authorized or required by the dealership and/or factory shall be paid for by the dealership, and the employee(s) shall receive base pay for any time lost while attending school.

If the dealership pays for said training and if the employee who receives such training voluntarily leaves the employer's employment within six (6) moths after receiving training, the employee shall be required to reimburse the employer.  These monies will be deducted from the employees' last paycheck.  No reimbursement will be

22

required if the employee leaves the industry, or relocates 100 miles away from dealership.

The Employer will pay a $25.00 per diem stipend for tolls, meals and mileage and agrees to review increases stipend requests.

Employees that fail to attend scheduled training shall be responsible for re-imbursement to the Employer for the cost of the course. In cases whereas an Employee has proof of a valid emergency situation, (death in family, illness, act of god or law enforcement activity that prohibited  travel), the Employee shall have no obligation in reimbursing the Employer the cost of the course.

## SECTION - XXXIII – LABOR COST INCREASE

The employer shall provide the below outlined labor cost increase effective July 1, 2019.
Such increase shall be allocated to the Hourly Wage Rates listed in Appendix "A" AND to both the individual and family monthly health and welfare contribution outline in Appendix "B" of the collective bargaining agreement.

| Effective Date | 7/1/2019 |
|---|---|
| All Classifications | $1.00 |

## SECTION – XXXV - HEALTH AND SAFETY:

A.  The Employer shall continue to take and maintain reasonable precautions and standards for the safety and health of its employees at the facility during the hours of their employment.

B.  The Employer shall furnish and use safety and health devices and safeguards and shall adopt and use methods and processes adequate to render the workplace safe and healthful in accordance with the requirements of the Occupational Safety & Health Act of 1970.

C.  The Employer agrees that no less than once per contract term the NYS Department

23

of Labor, on-site consultation program / Division of Safety and Health shall be contacted by the Employer in order for such agency to conduct a Safety and Health inspections of the Employer's facility.  If the results of such testing determine an issue with the air quality, the parties will immediately meet to create a solution to the substandard air quality. All employees shall adhere to all OSHA standards related to the servicing and repair of automobiles which management shall post and provide workshops from accredited instructors. Until the Employer fully complies with the aforementioned sentence, no employee shall subject to any type of disciplinary action.

D.  The Employer insures that each vehicle upon write-up and before entering the shop for service will be carefully examined for damage. Such damage will be recorded and each customer will sign off on an acknowledgment of such damage. Each employee shall take proper care of the vehicles they work on and shall report immediately any defects or vehicle problems, damages and/or accidents. Such reports shall be made on forms furnished by the Employer. The Employer shall not ignore or fail to follow-up on addressing and correcting health and safety failures in the facility. All employees covered by this agreement recognize that if they choose to engage in behavior or take action to cause a violation of safety rules, regulations and provisions of this section maybe just cause for disciplinary action up to and including discharge and therefore all employees must adhere to the following Health and Safety guidelines:

1.  The Employer shall make available the proper amount of shop tools and equipment for technicians to utilize in the diagnosis, repair, and service of vehicles in the most reasonably efficient and productive manner. The Employer agrees to maintain and organize all OEM and Special Tools in a secured area using a sign out system. Shop tools shall not be used for any other purpose than that intended and all damaged or

24

worn shop tools must be promptly reported to the Employer so immediate repair or replacement can take place;

2.   All vehicle lifts must be and remain in proper working order. Any employee that discovers a failure with his assigned vehicle lift must report such failure to management immediately.

3.   Power tools shall be operated only by authorized personnel, with guards furnished by the manufacturer "in place" and if electrical, shall be grounded;

4.   All posted safety rules shall be obeyed and shall not be removed except by management's authorization;

5.   All employees will report any infraction of the safety rules to their immediate supervisor for correction. In the event that the violation is not corrected immediately, the complaint should be appealed to the following in the order stated: General Manager, Fixed Operations Director, Direct Supervisor, and Human Resources Manager, where applicable;

6.   Employees will adhere to all of the Employer's safety policies which will be posted and copy of such shall be sent to the Union in addition to updates that may follow;

7.   Accident or injuries, regardless of their nature, shall be reported to the employee's Direct Supervisor for immediate attention. Management shall provide an injured employee a C-3 form for Workman's Compensation, upon request. The Employee shall be promptly provide a completed C-3 form from Management once completed Management will immediately process such C-3 form with its WC insurance carrier so the injured employee will receive his or her WC Case number without delay.

8.   All employees shall adhere to federal, state and local motor vehicle and traffic laws while driving any vehicle in the performance of his/her duties on behalf of the

25

Employer.

9.  Technicians are responsible for keeping their assigned work areas neat and orderly.

10. Employees must follow proper sign out procedures for specialty shop tools and return the specialty tools to the tool room before the end of each work day, where applicable.

11. The Employer shall provide vinyl / latex gloves to bargaining unit employee that requires in the performance of work that is assigned to him/her.  This provision shall not be abused.

12. The Employer will provide the proper lighting in all work areas and maintain the operation of such.

13. The Employer will act immediately to resolve and maintain any Pest Control issue with an authorized and licensed Company.

14. The Employer will install a Vehicle Exhaust Ventilation System with exhaust hoses for each Service Bay. The Employer shall provide documentation to the Union by no later than July 15, 2018 which outlines what Contractor shall be installing the system and when the Contractor shall be installing the system which must be installed by no later than August 30, 2018

15. The Employer will act immediately to resolve and maintain any issues with the buildings heating system with an authorized and licensed Company.

16. The Employer agrees to make all necessary repairs to the building's roof to prevent and leaks all work will be completed by no later than July 31, 2019.

17. The Employer agrees to continue to provide all necessary shop supplies as needed.

18. The Employer agrees to repair and  maintain all of the building's plumbing  and drains to keep them in proper working order.

26

## SUBSTANCE ABUSE:

A.  The parties recognize that in order to maintain a safe and healthy workplace, to
    reduce all potential incidents or accidents, in order to achieve high quality
    work, production and customer satisfaction that Substance abuse by all
    employees in the workplace during working hours cannot and must not be
    tolerated. As such the parties agree to the following:

B.  The Employer may require employees to submit to drug and/or alcohol testing
    following any work related accident or in the event the Employer has just cause
    to suspect the Employee may be intoxicated or under the influence of drugs or
    alcohol.

C.  Employees who are determined to be under the influence of drugs and /or
    alcohol during working hours may be subject to disciplinary action up and
    through and including discharge.

D.  Such employees will be subject to random drug and alcohol testing by the
    Employer for a six month period.

E.  Any employee who "self-reports" that they have a drug or alcohol dependency
    problem will be offered opportunity to take an unpaid leave of absence in order
    to seek rehabilitation and/or counseling for such problem. All employees shall
    be offered the opportunity to access assistance from Local 259 UAW's
    Employee Assistance Provider, Rich Buckman @ (631) 851-1295 and or NYS
    Office of Alcoholism & Substance Abuse Services, (OASAS), @ 1 (800) 522-
    5353.

F.  Upon the documented successful completion of such rehabilitation and/or
    counseling, the employee shall be reinstated to his/her former position with no

break in seniority.

G. **DRIVER QUALIFICATIONS:**

A.     It is the Employer's policy to screen all employees who are eligible or required to operate a company and/or customer vehicle for business purposes and ensure proper records are maintained.

B.     Every employee will be screened pursuant to the insurability guidelines of the Employer's Insurance Policy and must be deemed insurable prior to any use of a company and/or customer vehicle.

In order to screen employees the Employer requires the following:

    i.   <u>Driver's License:</u> Upon hire, and thereafter, the Employer requires a copy of the employee's valid driver's license, a copy of which will be maintained in their personnel file. If the license is not furnished, is expired or suspended/revoked, the employee is not allowed access to a Company and/or customer vehicle for business purpose. If an employee's license is suspended or revoked for any reason, this may be considered just cause for discipline up to and including discharge.

    ii.   <u>Motor Vehicle Reports (MVR's):</u> Upon hire, and thereafter, the Employer will run an MVR on the employee. This review documents the violations and accidents on the person's driver record over the last thirty-six (36) months. An employee consents to this check as a condition of their employment, and agrees to sign any documents necessary to effect this purpose providing that such documents are reviewed and agreed to by

28

the Union.

iii. <u>Motor Vehicle Record (MVR) Criteria:</u> Upon hire and thereafter, MVR checks are done to determine the acceptability of the employee to operate a vehicle for company business. In order to remain employed, the employee must be insurable under the company's liability policy.  If an employee is not insurable under the Employer's insurance policy, this could be considered just cause for discipline up and to including discharge. The Employer must provide the Union the Insurance Company's qualifying and disqualifying guidelines for insurability in order for the Employer to have the benefit of this Section.

C.    If an employee's driving privileges is suspended, revoked or restricted during his employment or should the employee's driving abstract change as a result of a motor vehicle infraction, accident or violation, for any reason, the employee must report the change immediately to the Employer.

Should any employee be suspended or discharged by the Employer because of the above outlined criteria, the employee shall have a period of 120 days to reverse the status of his Driver License and be deemed insurable by the carrier; if so, the Employer shall be obligated to reinstate the employee's employment at his former rate of pay, classification and seniority including any improvements of wages and benefits.

**SECTION XXXIV** - **TERM**:

This Agreement shall be effective June 1, 2019 and shall remain in full force and effect until May 31, 2020, and from year to year thereafter until terminated at the end of any such period by either party giving written notice to the other party sixty (60) days prior to such termination date, by Certified Mail.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed and have set their hands and seals thereto, executing this Agreement by their duly authorized agents this 5th day of July, 2019.

LOCAL 259 UAW

COMFORT AUTO GROUP NY, LLC.
dba Chrysler Jeep Dodge RAM Fiat of Bay Ridge

BY: _____

BY: _____

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

BY: _____

30

# A P P E N D I X
## "A"
### PREVAILING HOURLY AND MINIMUM HIRING RATES

| CLASSIFICATION | 12/31/1812/31/18 | 7/1/2019 |
|----------------|------------------|----------|
| Technician A | 28.94 | 29.50 |
| Technician B | 24.85 | 25.40 |
| Technician C | 19.50 | 20.05 |
| Quick Service – Hourly | 15.05 | 15.55 |
| Parts A | 25.65 | 26.20 |
| Parts B | 24.51 | 25.06 |
| Parts C | 18.00 | 18.55 |
| Apprentice | 15.00 | 15.55 |

Effective July 1, 2019 this list of employees hired after April 1, 2019 will have their hourly wages frozen until the current Contract Term ends on May 31, 2020.
Maxwell Gaskin, Ronald Munez, Bogdan Raykhshtat, Magiver Alba, Addal Sample, Eric Rojas, & Eustace Clark.

1. The weekly guarantee shall be 35.0 hours for Incentive Technicians and all Quick Service employees shall be hourly employees.

2. Time allowances: CPL and Internal shall be paid in accordance with ALL-DATA and warranty shall be paid in accordance with OEM policy.

3. Hiring rates for all classifications shall be the prevailing rates set forth. In no event shall any employee receive less than the above rates, however, probationary employees with the exception of Utility may be paid ten (.10) cents per hour less.

4. **INCENTIVE PRODUCTION BONUS:**

    A.    Effective 6/1/18 in addition to the aforementioned hourly rates, Technicians will be entitled to a production incentive as follows:

    i. Any hours produced between 45.0 and 49.9 hours in a given week, a technician will receive $0.75 retroactive to the first hour.

    ii. Any hours produced between 50 in any given week, a technician will receive an additional $1.25 cents retroactive to the first hour for a total of $2.00.

31

B.      In any work week in which an employee is not at work but is paid for

contractual time off such as sick, vacation, holiday, personal, bereavement, jury duty,

injury and training, the dealership will count the contractual time off as hours worked

for the purposes of determining if a productivity bonus is earned in the work week in

which the employee works less than five (5) days.

5. With exception to the current staffing of the Parts Department, going forward, the

Union shall only have coverage of no more than two (2) countermen at any time.


**LOCAL 259 UAW**                    **COMFORT AUTO GROUP NY, LLC.**

                                     **dba Chrysler Jeep Dodge RAM Fiat of Bay Ridge**


BY: _____                BY: _____



**INTERNATIONAL UNION, UNITED AUTOMOBILE,**
**AEROSPACE AND AGRICULTURAL IMPLEMENT**
**WORKERS OF AMERICA, UAW**

        BY:_____

32

# A P P E N D I X
## "B"
## LOCAL 259 HEALTH AND WELFARE PLAN
## SOCIAL SECURITY DEPARTMENT AGREEMENT

**Whereas**, the Employer desires to participate in the maintenance of the Local 259 Health and Welfare Fund of the Social Security Department of said Local;

**Now therefore**, it is agreed that; the Employer's monthly contributions to the Local 259 Social Security Fund shall be effective June 1, 2019 in the following amounts: Family Rate – One Thousand Five Hundred Fifty Eight Dollars and Twenty Six Cents ($1,558.26) and Single Rate - One Thousand Thirty Seven Dollars and Thirteen Cents ($1,037.13)

**ELIGIBILTY FOR HEALTH & WELFARE BENEFITS**: Effective September 1, 2015, eligibility shall begin for all benefits no later than ninety one (91) calendar days following the first day in which the employee begins work. The first contribution to the Local 259 Social Security Department on behalf of the employee is due by the 25th of the month prior to the ninety first (91st) day of employment. *For example: John begins work on September 1, 2015. The first contribution for John is due by November 25th. John's eligibility for all benefits becomes effective on December 1, 2015. Bob begins*

33

*work on September 16, 2015.  The first contribution for Bob is due by November 25th.*

*Bob's eligibility for all benefits becomes effective on December 1, 2015.*

Said contributions shall be made monthly and shall be payable on the 25th day of each preceding month for which payments are credited.

Payments will be made for employees on the layoff list, or those laid off due to termination of business or those who are physically disabled, which will cover them for one (1) month after the month during which they during which they are laid off or incapacitated.  No further payment will be made for employees who quit or are discharged.

While this agreement is in effect, the undersigned shall have the same rights and privileges as any other Employer who has heretofore executed this Agreement dated May 1, 1948, creating said Social Security Department of Local 259 UAW.

LOCAL 259 UAW                          COMFORT AUTO GROUP NY, LLC.

                                       dba Chrysler Jeep Dodge RAM Fiat of Bay Ridge

BY: _____      BY: _____

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

BY: _____

34

# A P P E N D I X "C"

## Reference is made to SECTION X – TOOL INSURANCE

The intent is to provide maximum security for mechanic's tools.  It was agreed that the following procedures be adhered to the tool insurance coverage:

1. All employees owning tools in the performance of their jobs shall submit an itemized inventory list in duplicate of their tools.  For example:

- One Snap-on tool box; six trays
- One set of 3/8' socket and ratchets set with extra ratchet and 16 sockets

- One set of ½" socket and ratchet set with extra ratchet and 23 sockets

- Two 3/8" breaker bars
  Two 1/2" breaker bars

- One electric impact wrench and set of sockets extra 8 sockets

- Eight slot head screwdrivers

- Five Philips head screwdrivers

- One vacuum compression gauge

- Etcetera

35

2. Agreements reached with management to accept a greater liability beyond the $50,000.00 for tools shall be put in writing and copies retained by the parties.

3. Chains and locks for protection against theft shall be provided for each mechanic who has submitted an inventory of his tools to the Management.

LOCAL 259 UAW, AFL-CIO   COMFORT AUTO GROUP NY, LLC.

           dba Chrysler Jeep Dodge RAM Fiat of Bay Ridge

BY: _____   BY: _____

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

BY:_____

36